Bell, J.
The obvious problem involved in this situation is the balancing of the protection due an employer whose unemployment record and consequent rate of contribution will be determined by the payment of weekly unemployment benefits against the freedom from the harassment of weekly appeals taken from determinations of eligibility for benefits and the consequent delay in the payment of those benefits.
The problem, of course, is not new. It is but another facet of the difference in sociological and political philosophy that has characterized this and other social legislation for more than a generation. The determination of that philosophy and the enactment of legislation to implement it are the function of the legislative branch of government, subject, as always, to judicial review from the standpoint of due process of law.
Does the legislation under review here constitute, as is claimed by the relator, the taking of property without due process of law as is within the protection of Section 16, Article I of the Constitution of Ohio?
Although this court has never specifically so labelled it, the *400 “contribution” paid by an employer into tbe State Unemployment Compensation Fund has all the indicia of a tax. Other courts and officials, however, have not been so hesitant to apply the tax label. Carmichael v. Southern Coal & Coke Co., 301 U. S., 495; State v. Feingold, 64 Ohio Law Abs., 509; Opinions of Attorney General (1941), 536, No. 3963. That the “contribution” has all the earmarks of a tax is borne out by the fact that unpaid contributions become a lien on the employer’s personal property (Section 4141.23, Revised Code) and occupy the same status, so far as priority is concerned, as tax liens. See Dutt v. Marion Air Conditioning Sales, Inc., 159 Ohio St., 290.
Unemployment compensation has long since become an accepted part of American life and its administration an important function of government. Taxes are the means by which the burden of the cost of government is distributed. Although most commonly levied on property or its use, they may likewise be levied on the exercise of personal rights and privileges. The authority to impose a tax on the right to employ is embraced within the wide range of choice of subjects of taxation which was attributed to our states at the time the federal Constitution was adopted and which was reserved to the states by that instrument.
And the power was exercised by government in several instances prior to the adoption of the federal Constitution. Ten years before the adoption of the Constitution, Parliament levied upon employers an annual duty of 21 shillings for “every male servant” employed in certain forms of work. Revenue Act of 1777, 17 Geo. Ill, Chap. 39. And, in 1780, the colonial Legislature of Virginia levied a tax of three pounds, six shillings and eight pence for every male subject to the payment of tithes and a like tax for “every white servant whatsoever, except apprentices under the age of 21 years.” 10 Hening’s Statutes of Virginia, 244. As Mr. Justice Cardozo once remarked (Steward Machine Co. v. Davis, Collr., 301 U. S., 548, 580), “our colonial forbears knew more about ways of taxing than some of their descendants seem to be willing to concede.”
The Unemployment Compensation Act clearly provides that, once this tax is paid by the employer, neither he nor any individual in his service has any prior claims or rights to the *401 amount paid into the State Unemployment Compensation Fund either in his own behalf or on behalf of such individuals. Section 4141.24 (A), Revised Code. Thereafter, “all contributions to the fund shall be pooled and available to pay benefits to any individual entitled to benefits irrespective of the source of such contributions.” Section 4141.24 (C), Revised Code. Obviously, then, it is not relator’s property that is “taken” when an unemployment benefit is paid. The payments are taken from the “pool” which has been made up for the benefit of all employees who are eligible to share in it. The situation is not unlike that where municipalities, counties and schools draw from the “pool” created by the payment of real estate taxes.
The employer, of course, has a definite stake in his tax rate, as do all taxpayers. This tax rate is computed annually from his unemployment experience as shown in the record of his individual account of unemployment benefits paid to his employees during the past year. Section 4141.26, Revised Code, provides that each employer shall be notified of his tax rate, and he may within a stated period of time apply for a review and determination thereof by the administrator. The same statute gives him the right to judicial review if he feels aggrieved by the decision of the administrator.
What safeguards, then, are actually accorded the employer under the Unemployment Compensation Act as it is now constituted? He may challenge the original determination of benefit rights and if dissatisfied resort to judicial review thereof. He may challenge the first claim for benefits and have the same right of review. If, after a period of employment during the employee’s benefit year, the employee again becomes unemployed, the employer may challenge any additional claim made and have the decision thereon judicially reviewed. And when his tax rate is determined, he may challenge that and have a judicial review thereof.
In our opinion, these safeguards meet the constitutional requirement of due process.
It may be argued, and was so argued by the relator, that failure to get a notice of the allowance of each weekly claim prevents it from contesting that particular claim, and that, as a result, its tax rate may be increased by virtue of that payment *402 being charged against its unemployment account. There is unquestionably merit to the argument. However, we are of the opinion that failure to get such notice does not amount to a lack of due process, and that the argument is one more appropriately to be made to the General Assembly.
. The writ of mandamus is, therefore, denied.

Writ denied.

Weygandt, C. J., Zimmerman, Taet, Matthias, Kerns and O’Neill, JJ., concur.
Kerns, J., of the Second Appellate District, sitting by designation in the place and stead of Herbert, J.